## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **J & J SPORTS PRODUCTIONS INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 14-cv-14143-DJC** |
| | ) | |
| **TONY CELA and TNA NIGHTCLUB, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                                         **October 9, 2015**

### I.     Introduction

Plaintiff J & J Sports Productions Inc. ("J&J") alleges that Defendants Tony Cela and TNA Nightclub, Inc. exhibited a professional boxing match in violation of 47 U.S.C. § 553, 47 U.S.C. § 605 and state law.  D. 1.  Defendants now move to dismiss under Fed. R. Civ. P. 12(b)(6) and Rule 12(b)(7).  D. 9.  For the reasons stated below, the Court DENIES the motion.

### II.     Standard of Review

In considering a motion under Rule 12(b)(6), the Court will dismiss a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  That is, the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).  This determination requires a two-step inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must distinguish the factual allegations from the conclusory legal allegations in the complaint.  Id.  Second, taking the Plaintiff's

allegations as true, the Court should be able to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

Rule 12(b)(7) provides that "a defendant may move to dismiss a claim when a plaintiff fails to join a required party." Phoenix Ins. Co. v. Delangis, No. 14-cv-10689-GAO, 2015 WL 1137819, at *2 (D. Mass. Mar. 13, 2015). "[T]he moving party carries the burden of showing why an absent party should be joined." Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 32 (D. Mass. 2000). "As with Rule 12(b)(6) motions, a court must accept the allegations contained in the plaintiff's complaint as true for the purpose of the Rule 12(b)(7) inquiry." McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 151 (D.D.C. 2014); Davis Cos. v. Emerald Casino, Inc., 268 F.3d 477, 479 n.2 (7th Cir. 2001) (noting that "[f]or purposes of a motion to dismiss for failure to join a party under Rule 19, we accept the allegations in the complaint as true"). However, "a court is 'not limited to the pleadings' and may consider 'other relevant extra-pleading evidence.'" Delangis, No. 14-cv-10689-GAO, 2015 WL 1137819, at *2 (D. Mass. Mar. 13, 2015) (citing Axis Ins. Co. v. Hall, 287 F.R.D. 110, 113 (D. Me. 2012)); Emerald Casino, 286 F.3d at 480 n. 4 (stating that "[i]n ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence").

## III.    Factual Background

In deciding Defendants' motion to dismiss, the Court assumes that the factual allegations in the complaint are true but is "not bound to accept . . . a legal conclusion couched as a factual allegation." San Gerónimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465, 471 (1st Cir. 2012).

J&J distributes and licenses sporting events commercially.  D. 1 ¶¶ 6, 12.  J&J was granted the exclusive nationwide commercial distribution (closed-circuit) rights to "Manny Pacquiao v. Manual Marquez, WBO Welterweight Championship Fight Program," a professional boxing match that was telecast nationwide on November 12, 2011 (the "Program").  Id. ¶ 10.  In turn, J&J granted various commercial entities, including entities in Massachusetts, the right to exhibit the Program publicly within their respective commercial establishments under sublicensing agreements.  Id. ¶ 11.

J&J expended a substantial amount of money on marketing, advertising, promoting, administering and transmitting the Program to the sublicensees.  Id. ¶ 12.  With full knowledge that the Program was not to be intercepted and exhibited by unauthorized commercial entities, Defendants showed the Program at the time of its transmission at their commercial establishment in Lawrence, Massachusetts.  Id. ¶ 13.

## IV.    Procedural History

J&J filed this lawsuit on November 12, 2014.  D. 1.  J&J asserts claims under 47 U.S.C. § 605 (Count I) and 47 U.S.C. § 553 (Count II).  Id.  ¶¶ 9-23.  J&J also asserts a common law conversion claim (Count III) and a violation of Mass. Gen. L. c. 93A §§ 2, 11 (Count IV).  Id. ¶¶ 24-33.  Defendants have now moved to dismiss.  D. 9.  The Court heard argument on the motion on September 17, 2015 and took the matter under advisement.  D. 13.

## V.    Discussion

### A.    J&J Sufficiently Pleads Its Claims

*1.    47 U.S.C. § 605 (Count I) and 47 U.S.C. § 553 (Count II)*

Count I alleges a violation of 47 U.S.C. § 605.  Section 605 "deals with communications traveling through the air (via radio)."  Charter Commc'ns Entm't I, DST v. Burdulis, 460 F.3d

168, 173 (1st Cir. 2006).  To state a claim under § 605, "a plaintiff must plead that the defendant received, assisted in receiving, or transmitted the plaintiff's satellite transmission without authorization."  J & J Sports Prods., Inc. v. Nguyen, No. 13-cv-02008-LHK, 2014 WL 60014, at *4 (N.D. Cal. Jan. 7, 2014).

Count II alleges a violation of 47 U.S.C. § 553.  Section 553 "covers communications traveling over cable wire."  Charter, 460 F.3d at 173.  To state a claim under § 553, "a plaintiff must plead that the defendant intercepted or received, or assisted in intercepting or receiving, any communications service offered over a cable system."  Nguyen, 2014 WL 60014, at *4 (citing DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008)).

J&J has not pled how the Program's signal was intercepted, i.e., whether by satellite or cable.  Nevertheless, courts have concluded that complaints like the one here should be treated as pleading alternative claims.  See, e.g., id. at *4 n.3 (stating that "[a]lthough the complaint does not specify whether Defendants intercepted a satellite transmission or a cable transmission, Plaintiff pleads alternative claims under § 605 and § 553"); J & J Sports Prods., Inc. v. Dougherty, No. 12-cv-1255-JD, 2012 WL 2094077, at *2 (E.D. Pa. June 11, 2012) (noting that although the complaint "does not specify how defendants intercepted the Broadcast," courts "routinely allow such alternative pleading in similar contexts"); Joe Hand Promotions, Inc. v. Lynch, 822 F. Supp. 2d 803, 805-06 (N.D. Ill. 2011) (allowing a commercial distributor of sporting events to plead § 605 and § 553 claims in the alternative because "the identification of the correct statute depends on ascertaining a fact of which the plaintiff may not yet be aware, namely, whether the defendant intercepted the Ultimate Fighting Championship by satellite or through a cable system").

4

This Court agrees.  J&J may assert alternative claims at this stage.  <u>See</u> Fed. R. Civ. P. 8(d)(2) (stating that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones" and "if a party makes alternative statements, the pleading is sufficient if any one of them is sufficient").

Defendants argue that Count I must be dismissed because as a factual matter, they received "cable communications through DirectTV," not radio or satellite signals.  D. 9 at 6. Defendants, however, provide no support for this factual assertion, and in any case, the Court cannot consider it without converting their motion into one for summary judgment.[1]  <u>Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008) (explaining that "[u]nder Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment").  Count I survives the motion to dismiss.

Next, Defendants argue that Count II must be dismissed because DirecTV gave them permission to broadcast the Program.  D. 9 at 7.  Defendants appear to be referencing § 553's safe harbor provision, which exempts "individuals who receive authorization from a cable operator" from liability.  <u>J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.</u>, 751 F.3d 346, 348 (5th Cir. 2014) (citing 47 U.S.C. § 553(a)(1)).  For support, Defendants attach their "valid contract" with DirecTV.  D. 9 at 7; D. 10.

The Court declines to consider the purported contract at this stage, which was never

---

[1] Moreover, contrary to Defendant's assertions, in some § 605 cases where DirecTV is a party, courts have described DirecTV as a satellite provider.  <u>See, e.g.</u>, <u>DirecTV, Inc. v. Robson</u>, 420 F.3d 532, 534 (5th Cir. 2005) (stating that DirecTV "is a nationwide provider of direct-to-home satellite programming"); <u>DirecTV, Inc. v. Rawlins</u>, 523 F.3d 318, 320 (4th Cir. 2008) (identifying DirecTV as a "satellite television service provider").

referenced in the complaint and which J&J disputes.  D. 11 at 8; Cormier v. Landry's, Inc., No. 13-cv-11822-NMG, 2013 WL 6196000, at *3 (D. Mass. Nov. 22, 2013) (declining to consider an affidavit that was not incorporated in the complaint).  Even if the Court were to consider the one-page document, as J&J notes, the purported contract states that Defendant Tony Cela is a new residential customer, a fact with no apparent bearing upon whether the Defendants, including the nightclub, were authorized to broadcast the Program at their commercial establishment.  D. 11 at 8 & n. 8.  Count II also survives the motion to dismiss.

<em>2.    Conversion (Count III)</em>

Count III alleges the tort of conversion.  "A plaintiff asserting a conversion claim under Massachusetts law must show that:  (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused."  Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993).

As an initial matter, "[w]hether . . . Massachusetts limits conversion claims to tangible property is debatable" because "the conversion concept is loosely defined, under Massachusetts law as elsewhere."  In re TJX Companies Retail Sec. Breach Litig., 564 F.3d 489, 499 (1st Cir. 2009); see Nekoroski v. Mathai, No. 11-4315-BLS1, 2012 WL 5309524, at *9 (Mass. Super. Ct. Sept. 28, 2012) (noting that "Massachusetts appellate courts do not appear to have faced" the issue of whether intellectual property and other intangible property can be the basis of a conversion claim "head-on in a civil case").  Courts in this district have held "that a plaintiff is not entitled to recover for conversion of intangible property."  Blake v. Prof'l Coin Grading

6

Serv., 898 F. Supp. 2d 365, 386 (D. Mass. 2012); but see Sentient Jet, LLC v. Apollo Jets, LLC, No. 13-cv-10081, 2014 WL 1004112, at *11 n.6 (D. Mass. Mar. 17, 2014) (stating that "the Court recognizes that the case law is unsettled as to whether Massachusetts limits conversion claims to tangible property" and "[c]ourts interpreting Massachusetts law have held that intangible property that is in some way merged with or inhered in a physical object can be the subject of a conversion claim") (citations, internal quotation marks and brackets omitted).   Yet, courts have also concluded that a conversion claim is viable in similar cases involving cable or satellite piracy.   Joe Hand Promotions, Inc. v. Lenihan, No. 11-cv-10504-TSH, 2012 WL 3637833, at *3 (D. Mass. Aug. 21, 2012) (finding that "[t]he facts support[ed]" a conversion claim on a motion for default judgment for a programming distributor that asserted the defendants unlawfully showed a sporting match at their commercial establishment, but awarding no damages because they were duplicative); Joe Hand Promotions, Inc. v. Rajan, No. 10-cv-40029-TSH, 2011 WL 3295424, at *6 (D. Mass. July 28, 2011) (same); J & J Sports Prods., Inc. v. Carvajal, No. 11-cv-40129-FDS, 2011 WL 4499156, at *1 (D. Mass. Sept. 26, 2011) (denying a motion to dismiss a complaint that included a conversion claim); Quincy Cablesystems, Inc. v. Sully's Bar, Inc. ("Quincy I"), 650 F. Supp. 838, 848 (D. Mass. 1986) (holding that operator of cable television system sufficiently stated a claim for conversion against commercial establishments that allegedly intercepted and exhibited sports games unlawfully).

Separately, Defendants argue that the Federal Communications Act ("FCA"), which includes § 553 and § 605, preempts the claim.  D. 9 at 7-8.  For support, they cite J & J Sports Prods., Inc. v. Patton, No. 10-cv-40241-FDS, 2011 WL 5075828, at *1 (D. Mass. Oct. 25, 2011). In Patton, the court held that a programming distributor's conversion claim was preempted by federal law.  Id. at *5.  First, the court asserted that the Fifth Circuit had concluded that the FCA

preempts conversion claims, "because applying common-law conversion in these cable piracy cases would result in 50 separate standards to solve a national problem." Id. (citing Prostar v. Massachi, 239 F.3d 669, 676-77 (5th Cir. 2001)).   Second, the Patton court noted that "the interests protected by conversion are analogous to those protected by the Copyright Act" and that the Copyright Act has been held to preempt a conversion claim. Patton, 2011 WL 5075828, at *5 (citing Quincy I, 650 F. Supp. at 849-50).[2]

Another court in this district, however, has found that § 553 and § 605 do not preempt conversion claims. See Rajan, 2011 WL 3295424, at *6; Lenihan, 2012 WL 3637833, at *3. The court explained that those sections "explicitly leave room for state law claims to address cable theft violations." Rajan, 2011 WL 3295424, at *6.   Additionally, the court explained that although Quincy I held that a program provider's conversion claim was preempted by the Copyright Act, it did so because the program provider allegedly held a copyright to the pirated programming. Id.; Quincy I, 650 F. Supp. at 849-850.   Because the Rajan plaintiff, a commercial distributor of sporting events, did not allege ownership of a copyright, Quincy I was distinguishable. Rajan, 2011 WL 3295424, at *6.

"Preemption questions ultimately turn on congressional intent, and the primary indicator of that intent is the text of the congressional act claimed to have preemptive effect." Good v. Altria Grp., Inc., 501 F.3d 29, 33-34 (1st Cir. 2007), aff'd, 555 U.S. 70 (2008).   Here, both sections expressly state that they do not intend to abrogate state law.   47 U.S.C. § 553(c)(3)(D) provides that "[n]othing in this subchapter shall prevent any State or franchising authority from enacting or enforcing laws, consistent with this section, regarding the unauthorized interception

---

[2] The judge in Patton faced this very issue in two other cable piracy cases and adopted the same reasoning.   See Joe Hand Promotions, Inc. v. Patton, No. 10-cv-40242-FDS, 2011 WL 6002475, at *5 (D. Mass. Nov. 29, 2011); J & J Sports Prods., Inc. v. Ivahy, Inc., No. 10-cv-40109-FDS, 2011 WL 3295431, at *5 (D. Mass. July 29, 2011).

or reception of any cable service or other communications service."  47 U.S.C. § 605(f) provides

that "[n]othing in this section shall affect any right, obligation, or liability under Title 17, any

rule, regulation or order thereunder, or any other applicable Federal, State, or local law."  As a

result, courts have held in similar contexts that § 605 does not preempt state law claims.  In

Quincy Cablesystems, Inc. v. Sully's Bar, Inc. ("Quincy II"), 684 F. Supp. 1138, 1143 (D. Mass.

1988), the court that § 605 did not preempt Mass. Gen. L. c. 93A because the language in §

605(f) establishes that "there is no clear Congressional expression that the state may not provide

penalties for video piracy" and in fact "[q]uite the opposite is true."  In Allarcom Pay Television,

Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 386 (9th Cir. 1995), the Ninth Circuit concluded that

the FCA did not preempt state law claims for unfair competition, interference with contract and

interference with prospective economic advantage because § 605's language "indicate[d] that

Congress did not intend to occupy the entire field" and state law did not "impose[] . . .

obligations inconsistent with the FCA" and did not "frustrate any congressional objective."

     Patton did not focus on the language in either § 553 or § 605 but cited Prostar for support.

Patton, 2011 WL 5075828, at *5.  In Prostar, the Fifth Circuit had to determine whether to use a

state or federal limitations period from analogous claims because § 553 and § 605 do not have

statutes of limitations.  239 F.3d at 671.  The general rule provides that state law supplies the

applicable period, but under a narrow exception, federal law applies if the state law period would

frustrate or interfere with the implementation of national policies.  Id. at 672 (citing N. Star Steel

Co. v. Thomas, 515 U.S. 29, 34 (1995)).  Although the Fifth Circuit concluded that conversion

was the closest state law analogue, it ultimately adopted the limitations period from the

Copyright Act because it concluded that that Act was an even closer fit and the "issues facing the

cable industry were national in scope."  Prostar, 239 F.3d at 676-77.  The Third Circuit, however,

has criticized <u>Prostar</u>'s reasoning and instead adopted a state-law limitations period for § 553. <u>Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.</u>, 366 F.3d 217, 223-24 (3d Cir. 2004).

At this stage of the litigation, the Court declines to dismiss Count III.  Sections 553 and § 605 expressly convey an anti-preemption intent and <u>Prostar</u> is not binding on this point.

> 3.    *Mass. G. L. c. 93A (Count IV)*

Count IV alleges that Defendants violated Mass. Gen. L. c. 93A.  In <u>Quincy II</u>, the court held that cable piracy constituted an unfair or deceptive act or practice under Chapter 93A.  D. 9 at 9.  Nevertheless, like with Count II, the Defendants argue that <u>Quincy II</u> is distinguishable because unlike the <u>Quincy II</u> defendants, they had secured authorization from DirecTV.  <u>Id.</u>

For the same reason explained above, the Court declines to entertain this factual assertion.  Here, J&J has alleged that Defendants unlawfully intercepted the Program's real-time transmission and displayed the Program without its express permission.  D. 1 ¶¶ 28-29.  Reading J&J's complaint as a whole, and in light of the fact that at this stage, J&J lacks detailed knowledge about how Defendants intercepted the Program, the Court agrees with the other courts in this district that have concluded that similar allegations can constitute an unfair or deceptive act.  <u>Patton</u>, 2011 WL 5075828, at *5 (concluding that illegally displaying a sporting match at a commercial establishment by intercepting the signal was an unfair practice); <u>Carvajal</u>, 2011 WL 4499156, at *2 (denying a motion to dismiss a complaint that included a claim under Mass. Gen. L. c. 93A, where the complaint alleged that the commercial establishment unlawfully showed the sporting event); <u>Quincy II</u>, 684 F. Supp. at 1143-44 (granting summary judgment for the plaintiffs on their Chapter 93A claim).

### B.    **Failure to Join DirecTV Does Not Require Dismissal of the Complaint**

"Dismissal under Rule 12(b)(7) is governed by Rule 19 of the Federal Rules of Civil Procedure." Raytheon, 123 F. Supp. 2d at 32. "Rule 19 defines a two-step process." Z & B Enterprises, Inc. v. Tastee-Freez Int'l, Inc., 162 F. App'x 16, 18 (1st Cir. 2006). At the first step, the court determines "whether [the] party is necessary, i.e., one who must be joined if feasible to do so." Id. "The term 'necessary' is a vestige of a superseded version of Rule 19 and no longer appears in the text . . . . Nevertheless, many circuits (including [the First Circuit]) continue to cling to the traditional nomenclature." Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 31 n.3 (1st Cir. 2010). "Lest there be any confusion, the word is used as a term of art and signifies desirability rather than actual necessity." Id. At the second step, the court must determine "whether the party is indispensable." Procurador De Personas Con Impedimentos v. Municipality of San Juan, 541 F. Supp. 2d 468, 474-475 (D.P.R. 2008); Z & B Enterprises, 162 F. App'x at 18.

Defendants argue that the salesperson and the installer who provided them with DirecTV are necessary parties because they are "the true cause" of J&J's harm. D. 9 at 10-11. "A party is a necessary party within the purview of Rule 19(a)(1)(A) only if, 'in that person's absence, the court cannot accord complete relief among existing parties.'" Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 13 (1st Cir. 2014). That an existing party may pursue or be subject to further litigation against other absent parties has no effect on the analysis under Rule 19(a)(1)(A). See, e.g., Bacardi Int'l Ltd. v. V. Suarez & Co., 719 F.3d 1, 12 (1st Cir. 2013) (noting that "[t]he mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party") (citation and internal quotation marks omitted); MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006) (affirming the refusal

to join Visa in a dispute between MasterCard and an international sports association even though both Visa and MasterCard were disputing the same exclusive sponsorship rights and "there [was] no question that further litigation between Visa and [the sports association], and perhaps MasterCard and Visa, is inevitable if MasterCard prevails in this lawsuit").

National Satellite Sports, Inc. v. Gianikos, No. 00-cv-00566-ALM, 2001 WL 35675430, at *1 (S.D. Ohio June 21, 2001), a case with similar facts, is instructive.  In Gianikos, National Satellite Sports, which had an exclusive license agreement to telecast a boxing match, sued a commercial establishment for broadcasting the match without its authorization.  In response, the defendant admitted to broadcasting the match but argued that it had received the match through Time Warner's equipment.  Id. at *1.  The defendant asserted that Time Warner was a necessary party under Rule 19 and moved to dismiss the case.  Id.

The Gianikos court rejected that argument.  Id. at *2.  "Although it appears from the record that [National Satellite Sports] could have brought similar claims against Time Warner, resulting in a larger damage award, this is not the proper inquiry under 19(a)(1)."  Id.  "Rule 19(a)(1) mandates that this Court turn a blind eye to possible further litigation between [National Satellite Sports] and Time Warner, and focus solely on whether complete relief can be afforded parties presently before the Court . . . . [National Satellite Sports] maintains the possibility of full recovery from [the defendant] in the absence of Time Warner."  Id.

Here, the Court can accord complete relief between J&J and Defendants, the only existing parties.  If Defendants are found liable, the issues between the parties will be resolved; no other party is needed to provide J&J the relief it seeks from Defendants.  "[T]hat an existing party's dispute with the absent party is left unresolved does not make [the salesperson or installer] a required party."  Charest v. Fed. Nat. Mortgage Ass'n, 9 F. Supp. 3d 114, 131 (D.

Mass. 2014).   Accordingly, the Court concludes that the salesperson and the installer are not

necessary parties under Rule 19(a)(1)(A).

Rule 19 does provide another way of showing necessity.  Rule 19(a)(1)(B) states that an

absent person must be joined if "that person claims an interest relating to the subject of the action

and is so situated that disposing of the action in the person's absence may:  (i) as a practical

matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

because of the interest."

Defendants also cannot meet this standard.   First, neither Defendants nor J&J have

identified an absent party who is claiming an interest relating to this action here.  Fed. R. Civ. P.

19(a)(1)(B).   Second, even if the salesperson and the installer were claiming an interest here,

their supposed liability is not at issue here and thus nothing impedes their ability to protect their

interests.  Finally, Defendants cannot show that proceeding with the case will subject them to a

substantial risk of incurring "inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B).  They argue

that unless the absent parties are present, they will be unable to lessen or avoid a judgment.  D. 9

at 11.  But Defendants are confusing "inconsistent obligations with inconsistent adjudications."

Bacardi, 719 F.3d at 12.  Inconsistent obligations occur "when a party is unable to comply with

one court's order without breaching another court's order concerning the same incident."  Id.

(citing Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1988) (per curiam)) (internal

quotation mark omitted).  Inconsistent adjudications occur "when a party wins on a claim in one

forum and loses on another claim from the same incident in another forum."  Id. (citing Delgado,

139 F.3d at 3).  Defendants' speculation about the liability of absent parties does not fall into the

former category.  Because the salesperson and the installer are not necessary parties under Rule

19, the Court declines to dismiss this case under Rule 12(b)(7).

## VI.      Conclusion

For all of the aforementioned reasons, the Court DENIES Defendants' motion to dismiss,

D. 9.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
